# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**TRACY GARRETT**                                                                                                    **PLAINTIFF**

**v.**                                               **Case No. 4:24-cv-00661-LPR**

**ARKANSAS DEPARTMENT OF HUMAN SERVICES**                        **DEFENDANT**

## ORDER

      Plaintiff Tracy Garrett is suing her former employer, the Arkansas Department of Human Services (ADHS).[1] Ms. Garrett, who is 57 years old, believes that the ADHS discriminated against her because of her age and sex.[2] And she believes such discrimination violates Title VII of the Civil Rights Act (Title VII), the Age Discrimination in Employment Act (ADEA), and the Arkansas Civil Rights Act (ACRA).[3] As relief, she seeks (1) "[a] declaratory judgment that [the ADHS's] practices violate" Title VII, the ADEA, and the ACRA; and (2) "[j]udgment for damages pursuant" to Title VII, the ADEA, and the ACRA.[4]

      The ADHS has moved to dismiss this case in its entirety.[5] Ms. Garrett has opposed this request.[6] The Court has reviewed the dueling Briefs as well as the Complaint. The Court does not need oral argument to decide this matter. The Court GRANTS the Motion to Dismiss,[7] but also gives Ms. Garrett 21 days in which to file a Motion for Leave to File an Amended Complaint

---

[1] Compl. (Doc. 1).

[2] *Id.* ¶ 2.

[3] *Id.* ¶ 3.

[4] *Id.* at 10–11. Ms. Garrett seeks compensatory and punitive damages, pre-judgment interest, reasonable attorneys' fees, and costs. *Id.* at 11. She also seeks "other and further relief as this Court may deem necessary, just and proper." *Id.*

[5] Mot. to Dismiss (Doc. 9).

[6] *See* Resp. in Opp'n to Mot. to Dismiss (Doc. 11).

[7] Mot. to Dismiss (Doc. 9).

(attaching the proposed Amended Complaint) if she believes she can remedy the deficiencies identified in today's Order.

## THRESHOLD ISSUES

Ms. Garrett does not have standing to seek a declaratory judgment on any of her claims. A declaratory judgment is a form of prospective relief, aimed at guiding future conduct rather than redressing past wrongs.[8] But Ms. Garrett is no longer employed by the ADHS, has not alleged that she is likely to work there again, and is not asking for reinstatement.[9] Accordingly, she has no need for, and thus is not entitled to, prospective relief.[10]

Ms. Garrett also may not pursue her damages claims under the ADEA or the ACRA. Under binding Supreme Court precedent, Arkansas and its agencies are, as a general matter, sovereignly immune from suit in federal court.[11] Although Congress attempted to abrogate state sovereign

---

[8] *See Just. Network Inc. v. Craighead County*, 931 F.3d 753, 764 (8th Cir. 2019).

[9] *See* Compl. (Doc. 1) ¶ 13, pp. 10–11.

[10] *See Just. Network Inc.*, 931 F.3d at 764 ("A complaint seeking a declaration of past liability . . . instead of future rights does not satisfy the definition of a declaratory judgment and renders declaratory relief unavailable." (citation modified)). In a supplemental Brief, Ms. Garrett argues that *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997) allows her "to pursue declaratory relief under Title VII and the ACRA." Pl.'s Suppl. Br. (Doc. 13) at 1. But *Robinson* did not concern declaratory relief. Instead, *Robinson* addressed "whether the term 'employee,' as used in § 704(a), includes former employees." 519, U.S. at 339. Accordingly, although the Supreme Court held that "former employees are included within § 704(a)'s coverage," *id.* at 346, that holding did not change the underlying (and constitutional) standing requirements for declaratory relief. The Court must determine, for each form of requested relief, whether Ms. Garrett has standing to seek the requested relief. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). And the Eighth Circuit has been clear that "declaratory relief is limited to *prospective* declaratory relief." *Just. Network Inc.*, 931 F.3d at 764; *see also Smith v. Reynolds*, 139 F.4th 631, 637–38 (8th Cir. 2025). Contrary to Ms. Garrett's contentions, *see* Pl.'s Suppl. Br. (Doc. 13) at 1–2, nothing in *Just. Network Inc.* (or any other binding case) suggests that this rule is limited to the § 1983 context or does not apply in the Title VII context. Long story short: Because Ms. Garrett is not seeking prospective declaratory relief, her request for a declaratory judgment must be dismissed for lack of standing.

The Court acknowledges that Arkansas has its own statute governing declaratory judgments. *See* Ark. Code Ann. § 16-11-101. But even if this provision permitted retrospective declaratory judgments, the Court would still not have jurisdiction to grant such relief. A retrospective declaratory judgment would either be used for res judicata purposes or it would serve no purpose at all. Either way, the Eleventh Amendment or Article III principles would prevent the Court from granting such relief. *See Green v. Mansour*, 474 U.S. 64, 73, 73 n.2 (1985).

[11] *See PennEast Pipeline Co., LLC v. New Jersey*, 594 U.S. 482, 499–500 (2021); *see also Doe v. Nebraska*, 345 F.3d 593, 597 (8th Cir. 2003) ("The Eleventh Amendment provides states, and state agencies, with immunity not only from suits brought by citizens of other states, but also from suits brought by their own citizens." (citation omitted)); *Pediatric Specialty Care, Inc. v. Ark. Dep't of Hum. Servs.*, 443 F.3d 1005, 1016–17 (8th Cir. 2006) (dismissing claims

2

immunity for Title VII and the ADEA, the Supreme Court ruled that only the Title-VII-related abrogation was constitutional.[12] So Arkansas remains sovereignly immune from ADEA damages suits in federal court.[13] And with respect to ACRA damages suits, Ark. Code Ann. § 16-123-104 is clear that "nothing in [the ACRA] shall be construed to waive the sovereign immunity of the State of Arkansas."[14]

That leaves only Ms. Garrett's Title VII claims. The Court will now address the merits of these remaining claims. The Court notes, however, that Title VII does not protect against age discrimination.[15] The Title VII claims are limited to claims of sex discrimination. The Court also

---

against the ADHS because it was immune from suit under the Eleventh Amendment), *vacated in part sub nom.*, *Selig v. Pediatric Specialty Care, Inc.*, 551 U.S. 1142 (2007).

[12] *Compare Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 729–30 (2003) ("Congress responded to [our] history of discrimination by abrogating States' sovereign immunity in Title VII of the Civil Rights Act . . . and we sustained this abrogation in *Fitzpatrick*."), *with Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000) ("The ADEA's purported abrogation of the States' sovereign immunity is . . . invalid.").

[13] In her supplemental Brief, Ms. Garrett agreed that "her ADEA claim for monetary damages is subject to Eleventh Amendment immunity." Pl.'s Suppl. Br. (Doc. 13) at 1.

[14] The ADHS did not raise sovereign immunity in its Motion to Dismiss or its supporting Brief. But "sovereign immunity is a 'threshold jurisdictional matter' and a 'jurisdictional prerequisite.' Therefore, . . . sovereign immunity may be raised for the first time on appeal or raised *sua sponte* by the court." *Amerind Risk Mgmt. Corp. v. Malaterre*, 633 F.3d 680, 686 (8th Cir. 2011) (citation omitted) (quoting *Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1044 (8th Cir. 2000)); *see also Long v. Area Manager, Bureau of Reclamation*, 236 F.3d 910, 916 (8th Cir. 2001) ("While the district court did not address the issue of eleventh amendment immunity, a question of subject-matter jurisdiction may be raised *sua sponte* at any time.").

With respect to the state-law ACRA claims, the Court acknowledges one quirk here. The Arkansas state courts do not (currently) treat sovereign immunity as an issue of subject matter jurisdiction. *See Walther v. FLIS Enters., Inc.*, 2018 Ark. 64, at 5, 540 S.W.3d 264, 267. But that procedural choice does not affect how federal courts should treat questions of sovereign immunity even on state law claims. Regardless of the nature of the sovereign immunity that applies in Arkansas state courts, the Supreme Court has been clear that "the Eleventh Amendment is an explicit limitation on the judicial power of the United States." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119 (1984). The judicial power granted by Article III of the Constitution does not include the power to "entertain suit brought by private parties against a state" (absent waiver or abrogation). *Id.* at 120. This limitation on the judicial power, "should not be construed to apply with less force to [supplemental] jurisdiction than it does to the . . . power to hear federal claims." *Id.* Because the Eleventh Amendment prohibits the Court from considering Ms. Garrett's state-law claims, the Court need not consider whether the ADHS forfeited a sovereign immunity defense under Arkansas law.

[15] *See* 42 U.S.C. § 2000e-2(a); *see also Smith v. City of Jackson*, 544 U.S. 228, 253 (2005) (O'Connor, J., concurring) (noting that "age discrimination [is] qualitatively different from the kinds of discrimination addressed by Title VII").

3

notes that Ms. Garrett is not claiming a failure-to-promote based on sex. Her sex discrimination claims are limited to the creation of a hostile work environment and her termination.[16]

## BACKGROUND

The following factual recitation is applicable only to this stage of the proceedings. That's because, in evaluating a motion to dismiss, the Court must accept as true the facts alleged in an operative complaint.[17] (The Court need not and should not accept legal conclusions or even otherwise conclusory statements.[18]) Given the foregoing parameters, here's what we know.

The ADHS hired Ms. Garrett as a Budget Specialist in December of 2021, when she was around 54 years old.[19] At that time, her supervisor was Regina Zimmer, the ADHS Business Operations Manager.[20] On or shortly after Ms. Garrett's first day of work, she was "called 'crazy' by a coworker in an elevator full of people" and she "hear[d] her coworkers argue about [her] approved lifting restriction, which was an accommodation for [her] disabilities."[21] These are the only two specific instances of (alleged) harassment identified in the Complaint during Ms. Garrett's time as a Budget Specialist. And neither of these comments appear in any way to be related to Ms. Garrett's sex.

---

[16] *Compare* Compl. (Doc. 1) ¶¶ 45–56 (referencing a hostile work environment and her termination in the Title-VII-cause-of-action section), *with id.* ¶¶ 57–68 (referencing denial of a promotion in addition to a hostile work environment and her termination in the ADEA-cause-of-action section).

[17] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[18] *See, e.g.*, *Wiles v. Capitol Indem. Grp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true when considering a motion to dismiss, the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations.").

[19] Compl. (Doc. 1) ¶¶ 17–18. Although the Complaint tells us that she was hired as a Budget Specialist, the Complaint does not detail what a Budget Specialist does.

[20] *Id.* ¶ 22.

[21] *Id.* ¶ 23.

It is true that the Complaint implies that the foregoing comments are just examples of comments to which Ms. Garrett was subjected during her tenure as a Budget Specialist.[22] But those portions of the Complaint are entirely conclusory (and vague) in nature. They are not the types of assertions of fact that the Court must (or should) accept as true.

In any event, Ms. Garrett eventually requested to be moved to a new supervisor.[23] This request was made in October of 2022.[24] According to the Complaint, Ms. Garrett made this request in an attempt to alleviate (what she characterizes as) the "hostile work environment she was experiencing."[25] The ADHS granted Ms. Garrett's request, moving her to a receptionist position.[26] Ms. Garrett began reporting to Kathy Flowers, the ADHS Audit Coordinator.[27]

About six months later, in April of 2023, Ms. Garrett and some of her coworkers "were berated in an elevator by [another] coworker over work issues that did not involve [Ms. Garrett]."[28] And, in August of 2023, "a coworker made repeated statements to [Ms. Garrett] that she was being fired."[29] The Complaint does not identify either of the offending coworkers. The Complaint does not link these comments to Ms. Garrett's sex in any way. And the Complaint does not tell us how many times Ms. Garrett was told by her co-workers that she was getting fired.

---

[22] *Id.* ¶¶ 18, 23–24.

[23] *Id.* ¶ 24.

[24] *Id.*

[25] *Id.*

[26] *Id.* As with the Budget Specialist Position, the Complaint does not describe the details of the receptionist position. The Complaint does say that Ms. Garrett's job duties changed substantially. *Id.* But this, again, is a conclusory statement not backed up by pled facts. The Court need not (and should not) accept it as true.

[27] *Id.* ¶ 25.

[28] *Id.* ¶ 27.

[29] *Id.* ¶ 28.

Two months later, in October of 2023, Ms. Garrett applied for what she characterizes as a promotion.[30] A female co-worker named Ray also applied for the promotion.[31] Ms. Garrett "witnessed Ray completing interview tests at her desk with help from other employees in the office."[32] On the other hand, Ms. Garrett "was required to complete the interview tests alone in a separate room."[33] And "[p]rior to . . . completing the interview process," Ms. Garrett's current supervisor (Ms. Flowers) and previous supervisor (Ms. Zimmer) told Ms. Garrett "that she would not receive this promotion."[34]

In December of 2023, Ms. Garrett requested a meeting to discuss the "promotional position."[35] The meeting participants were Ms. Garrett, Ms. Zimmer, Ms. Flowers, and someone named Andy Morgan.[36] The Complaint does not tell us who Andy Morgan is. During this meeting, Mr. Morgan told Ms. Garrett "that she had an attitude and that[,] if she were a man, she would have been fired . . . ."[37] He also "made a statement to the effect of, '[n]o wonder the other managers don't want you.'"[38]

---

[30] *Id.* ¶ 29. The Complaint characterizes the job as a "promotional position," but that again is a conclusory statement unsupported by pled facts.

[31] *Id.* The Court reads the Complaint to suggest that Ray is a woman because the Complaint states that "Ray complet[ed] interview tests at *her* desk . . . ." *Id.* (emphasis added). Although it is possible that Ms. Garrett meant to say that Ray completed the tests at Ms. Garrett's desk, the better reading is that the Ray completed the tests at Ray's personal desk (i.e., "her own desk"). Additionally, if Ray is a woman, this might explain why Ms. Garrett is not claiming a failure-to-promote based on sex. *See supra* note 16.

[32] Compl. (Doc. 1) ¶ 29.

[33] *Id.*

[34] *Id.* ¶ 30.

[35] *Id.* ¶ 31.

[36] *See id.*

[37] *Id.*

[38] *Id.*

In January of 2024, during a winter weather issue that required Ms. Garrett to work from home, Ms. Garrett discovered a problem with her computer.[39] After returning to work, Ms. Garrett was instructed by her supervisor (Ms. Flowers) to report the problem to IT.[40] Ms. Garrett did this and requested a new laptop as a replacement.[41] Shortly thereafter, Ms. Garrett's former supervisor (Ms. Zimmer) "berated [her] for contacting IT and request[ing] a new laptop . . . ."[42]

Ms. Garrett's interpersonal workplace conflicts did not end there. On January 23, 2024, Ms. Garrett "approached [Ms. Flowers] in her office" to request a meeting with Ms. Flowers and Ms. Zimmer.[43] It appears that Ms. Garrett wanted to discuss (1) Ms. Zimmer's reaction to Ms. Garrett's request for a replacement laptop,[44] and (2) Ms. Garrett's concern that, pursuant to the encouragement of Ms. Flowers and a woman named Sandra Strobel (the Finance Section Manager), Ms. Garrett "was constantly surveilled and corrected by" non-supervisors, including being "question[ed] . . . if she failed to immediately answer the phone because, for example, she stopped to take a drink of water or to complete another task."[45] Ms. Flowers refused to discuss the foregoing issues and instead accused Ms. Garrett of insubordination.[46]

---

[39] *Id.* ¶ 32.

[40] *Id.* ¶ 33.

[41] *Id.*

[42] *Id.*

[43] *Id.* at 37.

[44] *See id.* ¶¶ 33, 37.

[45] *Id.* ¶ 34; *see also id.* ¶¶ 35–37. To the extent Ms. Garrett is alleging that she wanted to discuss these perceived issues in a meeting, the Court accepts the allegation as true. But to the extent Ms. Garrett is trying to allege that, in reality, she was "constantly surveilled and corrected" by non-supervisors, such allegations are vague and conclusory. *Id.* ¶ 34. What is meant by "surveilled"? What is meant by "corrected"? How often is "constantly"? How many individuals are we talking about? In what time period did this occur? The Complaint leaves us without any such pled facts. Somewhat similarly, to the extent the Complaint is alleging that Ms. Flowers's and Ms. Strobel's encouragement of this conduct was "a means of continuing the harassment against her," such an allegation is entirely conclusory and unsupported by any pled facts. *Id.* ¶ 35.

[46] *Id.* ¶ 40.

Sometime later—an unidentified time between January 23, 2024, and February 14, 2024—Ms. Flowers "complained" to someone—an unidentified person—at the ADHS "that [Ms. Garrett] screamed in her face, swore at her, fisted her hands and made other physical gestures of anger, and followed her onto the elevator as she left the office, which made her uncomfortable and afraid."[47] Ms. Flowers added that "she was afraid for her safety and afraid that [Ms. Garrett] was going to damage her vehicle."[48] According to the Complaint, Ms. Garrett didn't do these things.[49] That is, "Flowers intentionally exaggerated and lied about her actions . . . ."[50]

On February 14, 2024, the ADHS fired Ms. Garrett.[51] The ADHS said it was doing so because Ms. Garrett violated Employee Discipline Policy 1084 concerning behavior expectations for professionalism.[52] Ms. Garrett believes this wasn't the real reason for her termination.[53] As far as her Title VII claims are concerned, Ms. Garrett believes she was terminated as a result of sex discrimination and/or retaliation for her reports of sex discrimination.[54] In this vein, Ms. Garrett notes that she filed an EEOC charge of sex discrimination on January 23, 2024, (about three weeks before being fired).[55]

---

[47] *Id.* ¶ 38.

[48] *Id.*

[49] *See id.* ¶¶ 39–41.

[50] *Id.* ¶ 41.

[51] *Id.* ¶ 43.

[52] *Id.*

[53] *See id.* ¶ 44.

[54] *Id.*

[55] *Id.* ¶ 42. Ms. Garrett also says that she "made complaints . . . to her employer" about sex discrimination. *Id.* ¶ 20. But she does not say when she made these complaints or to whom she made them. The Court does not read the Complaint to allege that, in October of 2022, Ms. Garrett told someone at the ADHS of her perception of a hostile work environment or any other instances of discrimination. If that is an allegation Ms. Garrett means to make, she must be clearer about it. Nor does the Court read the Complaint to allege that Ms. Garrett internally reported any discrimination in December of 2023 or January of 2024. If these are allegations Ms. Garrett means to make, she must be clearer about them.

## ANALYSIS

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[56] "A [Rule 12(b)(6)] motion to dismiss a complaint should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle [her] to relief."[57] Moreover, for such a motion, the Court must treat the record in a very specific way. First, the Court may only consider allegations in a complaint, materials attached to or embraced by that complaint, public records, and other evidence of which the Court has properly taken judicial notice.[58] Second, the Court must take as true all facts pled in the complaint.[59] Third, the Court must then decide, based on those assumed-to-be-true facts, whether a plaintiff has a plausible claim for judicial relief.[60] The plausibility threshold is quite low, but it is not nothing. It requires more than a possibility that the defendant acted unlawfully, but far less than a certainty that the defendant acted unlawfully.[61]

Let's start with the hostile work environment claim. This is easy. Regardless of whether Ms. Garrett is claiming a hostile work environment based on sex or based on retaliation for reporting of sex discrimination, her claim cannot survive dismissal as currently pled. Section II(A)(2) of the ADHS's Motion-to-Dismiss Brief is spot on.[62] Once the conclusory assertions in

---

[56] *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[57] *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).

[58] *See Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012).

[59] *See Iqbal*, 556 U.S. at 678. On the other hand, the Court is not required to (and should not) accept a complaint's legal conclusions or conclusory allegations. *See, e.g.*, *Wiles v. Capitol Indem. Grp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true when considering a motion to dismiss, the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations.").

[60] *See Ingram v. Ark. Dep't of Corr.*, 91 F.4th 924, 927 (8th Cir. 2024).

[61] *See Iqbal*, 556 U.S. at 678.

[62] *See* Br. in Supp. of Mot. to Dismiss (Doc. 10) at 4–6. The Court is certainly not suggesting that other sections of the ADHS's Brief—for example, Section II(A)(1)—are incorrect. *See id.* at 3–4. But the Court need not address Section II(A)(1) given its agreement with Section II(A)(2).

the Complaint are ignored, the specific comments and incidents alleged come nowhere close to the severity or pervasiveness required by Eighth Circuit precedent for hostile work environment claims.[63]

The termination claim is a bit more complicated, but not by much. Ms. Garrett claims she was terminated because of her sex and/or in retaliation for complaining of sex discrimination.[64] As to the direct sex discrimination portion of the claim, there are no allegations to make this assertion plausible. The only reference to Ms. Garrett's sex over the course of her entire employment came from Andy Morgan.[65] The Complaint provides us with no idea who Mr. Morgan is. And there is no allegation that Mr. Morgan was involved in the decision to terminate Ms. Garrett. In fact, the Complaint does not even tell us who was involved in the decision to terminate Ms. Garrett. Without more, there is nothing but rank speculation to link Ms. Garrett's termination to sex discrimination.[66]

As to the retaliatory firing portion of the claim, the problem for Ms. Garrett arises from the vagueness of her Complaint. For certain, she adequately alleges that she was fired 22 days after she filed an EEOC charge for, *inter alia*, sex discrimination.[67] But she does not allege that anyone at the ADHS—much less the unnamed person or persons that fired her—knew of the EEOC charge

---

[63] *See id.* at 4–6; *see also Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 799 (8th Cir. 2021) ("A hostile work environment claim must allege more 'than a few isolated incidents.' The alleged harassment 'must be so intimidating, offensive, or hostile that it poisoned the work environment.' . . . The 'standards for a hostile environment are demanding, and conduct must be extreme and not merely rude or unpleasant to affect the terms and conditions of employment.' Courts must '*filter out complaints* attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" (citations omitted) (quoting *Blomker v. Jewell*, 831 F.3d 1051, 1057 (8th Cir. 2016))).

[64] *See* Compl. (Doc. 1) ¶ 44.

[65] *See id.* ¶ 31.

[66] Ms. Garrett does adequately allege that her supervisor (Ms. Flowers) lied about Ms. Garrett's conduct in the January 23, 2024 meeting. *See id.* ¶¶ 39–41. But Ms. Garrett did not adequately allege that whoever terminated Ms. Garrett actually knew Ms. Flowers was lying. And, more importantly, there are no pled facts to make it plausible that Ms. Flowers was lying because Ms. Garrett was a woman.

[67] *See id.* ¶¶ 42–43.

10

prior to the date of her termination. Similarly, Ms. Garrett does not allege that Ms. Flowers knew of the EEOC charge when Ms. Flowers (allegedly) lied and exaggerated about Ms. Garrett's behavior at the January 23, 2024 meeting.[68] Although it is not one-hundred-percent clear from the Complaint, it appears Ms. Flowers's accusations about Ms. Garrett's conduct during this meeting formed the proffered basis of Ms. Garrett's termination.[69] In short, as currently pled, there are serious missing links between any alleged protected activity and the termination.[70]

## CONCLUSION

For the reasons discussed above, the Court GRANTS the Motion to Dismiss.[71] The Court dismisses Ms. Garrett's claims without prejudice. And the Court will give Ms. Garrett 21 days in which to file a Motion for Leave to File an Amended Complaint (attaching a proposed Amended Complaint) if she believes she can remedy the deficiencies identified in today's Order.[72]

IT IS SO ORDERED this 2nd day of July 2025.



LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[68] Indeed, it is likely that Ms. Flowers did not know of the EEOC charge at that time. The EEOC charge was filed on January 23, 2024, which was the same day as the meeting in which Ms. Flowers accused Ms. Garrett of acting inappropriately. *See id.* ¶¶ 37, 42. The Complaint is not entirely clear on when Ms. Flowers made her accusations, but it appears they were made close in time to that meeting. If they were, Ms. Flowers would not yet have known about the EEOC filing.

[69] *See id.* ¶¶ 37, 43.

[70] The Court has already explained that Ms. Garrett has not adequately pled that she made internal complaints constituting protected activity. *See supra* note 55. To this, the Court only adds that, if there were qualifying internal complaints made by Ms. Garrett in October of 2022 and December of 2023, the lapse of time between those internal complaints and Ms. Garrett's termination would severely (and perhaps fatally) undercut any relevance they might otherwise have. *See Kipp v. Mo. Highway and Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002) ("[T]he interval of two months between the complaint and [the plaintiff's] termination so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in [the plaintiff's] favor on the matter of causal link.").

[71] Mot. to Dismiss (Doc. 9).

[72] The Motion, if made, must comply with the Federal Rules of Civil Procedure and the Local Rules of the Eastern District of Arkansas.